Sutliff, J.
All persons having any interest in the lands have been, by petition and cross petition, made parties, and perhaps to a greater extent even than would have been admissible under our former practice by bill and cross bill in chancery. No exception, however, is taken to misjoinder, either of parties or causes of action.
The action is brought by the plaintiffs to recover from the defendants the damages by them sustained in consequence of the existing incumbrance upon the lands so conveyed by John Waddell at the time of his respective conveyances.
The plaintiffs claim that the foregoing facts entitle them to recover under the general warranty contained in the respective deeds of Waddell, the amount of damages they have, in fact, sustained, to wit.: the amount of the decree, $2694.62, so due upon the mortgage, together with $51.56 costs, and $380, necessarily expended as attorney fees in the defense; making the sum of $3125.18, with interest from the date of said decree.
The defendants insist that even in case of a breach of the covenants in the deeds of Waddell, the amount to be recovered would necessarily be limited by the amount of purchase money constituting the consideration for which the grantor, Waddell, so executed said deeds of conveyance.
In the case of King v. Kerr’s adm’rs, 5 Ohio Rep. 155, the rule of damages, under a covenant of warranty, is said to be the actual loss to the warrantee, when ascertained under the *244 occupying claimant law. In the case of Burnet v. Corry, 10 Ohio Rep. 317, the rule of damages under a covenant of warranty, is said to be the amount paid to extinguish the incumbrance, provided the same does not exceed the consideration money and interest.
What would be the rule applicable to the case before us, might well admit of some doubt, if the plaintiffs should be entitled to recover; depending as the rule does upon the nature and terms of the covenant found to be broken.
But the defendants in this case, in the first place, deny that there has been any breach of the covenants contained in the deeds of their ancestor.
The plaintiffs charge, as the gist of their action, that the lands mentioned, were conveyed by said Waddell, to the grantees, “by deeds with covenants of general warranty,” and that previous thereto, one Alexander McLaughlin, while being the owner of the lands, had executed a mortgage thereof, to secure his indebtedness to the mortgagee ; and that in 1845, an action in ejectment, and a proceeding to foreclose were commenced upon said mortgage against the lands, and in 1855, the holder succeeded in obtaining a decree upon said mortgage, for $2694.62 and costs, and an order of sale of the lands for the payment thereof; and that to prevent the sale, they were obliged to pay, and did pay the sum so found due upon said mortgage.
The common law warranty of title of lands, we are told, was originally created without any covenant to that effect; it was a natural incident of tenure. “ By the feudal constitution, if the vassal’s title to the fee which he had received at the hands of his lord, were disputed, he might call upon the lord or donor to warrant or insure his gift, which if he failed to do, and the vassal was evicted, the lord was bound to give him another feud of equal value in recompense.” This obligation upon the lord seems to have arisen from his relation to his tenant. The same feudal system which imposed upon-the grantee the duties of tenure, also imposed upon his grantor, the lord, a reciprocal obligation either to protect the ten ant in his feif or to give him another ; and this obligation de *245 ■scended upon the heir of the lord as long as he had any lands to answer it. Afterward when it became usual to authenticate a conveyance, or transfer of lands by a charter, or deed, the word of feoffment “ dedi,” implied a warranty. The common law warranty was however, in England, in the parly history of conveyances, superseded by the use of covenants for title. And in this country, the absence of the law of primogeniture would, of itself, have prevented the adoption of the common law warranty, with its common law incidents.
In some of the States, this modern covenant of warranty, which has so taken the place of the old common law warranty In England, is, generally, the only express covenant employed, while in others of the States, it is usual to insert all the spec ial covenants, for seizin, for right to convey, against incumbrances, for quiet enjoyment, for further assurances and of warranty. But in either case this modern covenant of warranty is the same in character. It is a personal covenant, and differs from the common law warranty, not only as to the pe-culiar forms of remedy, but in not imparting necessarily (whether annexed to a leasehold or freehold estate), an absolute right and power of granting, as in the case of the common law warranty.
Again, the modern covenant of warranty never descends .to the heir of the grantee, as did the common law warranty, unless so expressed in the deed. > But in this State, it has .always been usual to insert special covenants in deeds of conveyance ; and when so expressed, in ease of a breach of covenant, to refer the same .to the covenant to which the facts .of the case make it appropriate.
The act complained of in this case as a breach of the covenants of the deeds, is the incumbrance existing upon the lands by means of the prior mortgage, and suffering the same -to become operative upon the land, to the interruption of the title so conveyed, or assumed to be conveyed by the deeds of Waddell. If, therefore, this constitutes a breach of the covenant of the grantor, it would seem to be peculiarly referable to the covenant in relation to incumbrances. What then, is the stipulation of the grantor in relation to existing incum *246 b'ranees? Does the deed treat particularly upon that subject ? If not, then the general covenant may be presumed to include any breach affecting the title, unless qualified by an express exception. For the deed, like all contracts, must be construed as a whole, and, if practicable, so as to give all its parts full effect.
The covenant against incumbrances is not expressed in the deeds in the usual form, that “ the premises are, and forever shall remain free from all incumbrances; ” but only that they “ are and forever shall remain free from all former and other incumbrances done or suffered to be done ” by the grantors.
It was the right of the parties to make their own contract and covenants. And whether general or special, the covénants can only have effect according to their express terms. This covenant against incumbrances, is a special one, being only in regard to incumbrances “done or suffered” by the grantors. The incumbrance complained of was imposed upon the lands by others, and before Waddell had acquired the title, and does not appear to have been by his act or assent, and is not, therefore, within his covenant against incumbrances.
But it is claimed by the plaintiffs that the covenant of warranty immediately following the special covenant against incumbrances, includes a covenant against incumbrances; ánd we are referred to the case of King v. Kerr, in which it was so held. It is obvious, from the nature and extent of the covenant of warranty, it would include incumbrances as well as other causes, or claims invalidating the title ; but, as already observed, where there is a* special provision in relation to incumbrances, refusing to covenant against them, or a Qualified covenant in relation to incumbrances, the same being part of the deed, the whole must be taken together, and so construed as to give the entire instrument effect in all its provisions, and to make it consistent. The obvious fact, that the grantor has expressed certain incumbrances against which he has covenanted, and has omitted this incumbrance, must be regarded as an exception of this incumbrance in his covenants. The maxim, expressio unius est exolusio alterius, or, as dtherwise expressed, expressum faeit taciturn, has an ap *247 propriate application; and the covenant against incumbrance must be regarded as though it contained an express exception of this incumbrance.
The cases, both ancient and modern, to which our attention has been directed by the counsel in this case, seem quite uni form in support of this construction of these covenants.
One of the earliest cases having any bearing upon the subject is Broughton v. Conway, 2 Dyer, 240a; S. C. Moor, 58. The point decided is clearly expressed in the marginal note as follows: “ After dower recovered against a termor, he leases over and covenants ‘ that he has done no act to impeach, but that the assignees may quietly enjoy without let of him, or of any other person;’ the words but that have relation to the covenant that he had done no act, and extends it only to acts done by the defendant.”
To the same effect is Nokes’ case, 4 Coke’s Rep. 806. “ The defendant demised to the plaintiff an house'in London, by these words, ‘ demise, grant, etc.,’ and the lessor covenanted that the lessee should enjoy the house during the term, without eviction by the lessor, or any claiming under him.” The lessee was evicted by a stranger, and brought his action against the lessor. Among other points decided by the court, it was held that the words demise, grant, etc., imported a general warranty; but further, “it was held by Popham, Chief Justice, et totam curiam, that the said express covenant qualified the generality of the covenant in law, and restrained it by the united consent of both parties, that it should not extend farther than the express covenant, quia clausa general’ non ref erf ad expressa, in this case. And so was it now lately adjudged in Hammond’s case in this court.”
And Coke adds: “ And there is great reason in the principal case, that the particular covenant subsequent should qualify the general force of the word demisi, for otherwise the particular covenant would be in vain, if the force of this word demisi should stand; and also these words demisi and concessi are frequent in every ordinary lease that is made; and the best construction of deeds is to make one part of the deed expound the other, aiid so make all the parts agree, ei *248 quoad fieri possit, according to the true intent and meaning of the parties.”
The case of Gale v. Reed, 8 East. 80, decided in 1806— opinion by Lord Elenborough — recognizes the same rule “ And this mode of construction,” he says, page 89 of the report, “ is agreeable to the received rules and maxims, aa well as to the authorities of law; for, as is said in Plowd. 18, ‘ the scope and end of every matter is principally to be considered; and if the scope and end of the matter be satisfied, then is the matter itself and the intent thereof also accomplished.’ So Lord Hobart says, 275: ‘the law being a judge of an act, deed, or bargain, consisting of divers parts, containing the will and intent of the parties, all tending to one end, doth judge of the whole, and gives every part his office to make up that intent, and doth not break the words in pieces.’ And accordingly, in many cases, the most general words in a -deed have been holden to be narrowed and restrained by the apparent object and intent of the parties as collected from the same deed. Thus in Broughton v. Conway, Moor, 58, in debt upon obligation with this condition, that whereas the defendant had sold to the plaintiff a lease for years of the manor of S., he would not do nor had done any act to disturb the plaintiff’s possession of it; hut that the plaintiff should hold and enjoy this peaceably, without the disturbance of the defendant or any other person; it was holden by all the justices that the defendant was not bound by the words of the condition to warrant peaceable possession to the vendee, but only against acts done, or to be done by himself, and that all the sequel of the condition which comes after the word but, shall be referred to the antecedent part of the condition, and expounded and extended in like manner ; that is to say, that he shall enjoy it without disturbance of any person or persons by any act by him, done or to be done.”
Also, see Hesse v. Strumson, 3 Bos. & Pul. 574.
Sugden, in his work on Vendors, vol. 2, p. *527, sec. 6, states the rule as follows: “ Where restrictive words are inserted in the first of several covenants having the same object *249 they will be construed as extending to all the covenants, although they are distinct.”
The American cases seem generally tc follow the English authorities, so for as they are to be.found bearing upon this question.
The earliest case is that of Cole v. Hawes, 2 John. Cas. 203, and the point decided is thus stated in the syllabus: “ Where the grantor in a deed covenanted generally, that he was well seized, etc., and had a good right to convey the premises, etc., and then added further, that he warranted the premises to the grantee and his heirs, ‘ against all claims and demands except the lord of the soil/ it was held that both .covenants must be taken and construed together, and that the last qualified and restrained the first.”
In the case of Jackson v. Hoffman, 9 Cowen, 271, a sale had been made by administrators, under an order of court; the conveyance executed by them recited that a certain mortgage was an existing incumbrance upon the lands conveyed; the subsequent part of the deed contained, in the usual form, a personal covenant of seizin, for quiet enjoyment, and a covenant of general warranty. It was held that the recital qualified the covenants, and prevented their application to •such incumbrance. “ Those covenants can not, I think,” said Sutherland, J., p. 273, “ be fairly construed as relating to, or embracing the Ellison mortgage, which in a previous part of the deed had been recited as a subsisting incumbrance upon the premises conveyed. 1 Cowen, 126. Those covenants may have their full operation and effect by being considered as applicable to all other incumbrances except the mortgage.”
See, also, Brown v. Staples, 28 Maine (15 Shep.), 497; Allen v. Lee, 1 Smith, 12.
The case of Eastabrook v. Smith, 6 Gray, 572, it must be admitted, seems quite inconsistent with our holding in this «ase.
The facts were these: Smith conveyed to Eastabrook a tract of land, and made the following covenants: “And I do •for myself, my heirs, executors and administrators, covenant with the said E. R. Eastabrook, his heirs and assigns, that I *250 am lawfully seized in fee of the aforegranted premises: that they are free of all incumbrances, except a mortgage to Spencer Meld for $368.85; that I have good right to sell and convey the same to E. R. Eastabrook; and that I will and my heirs shall warrant and defend the same premises to the said E. R. Eastabrook, his heirs and assigns forever against the iwful claims and demands of all persons.”
The breach assigned, was that the plaintiff had been compelled to pay off this same Spencer Field mortgage. The proof showed that the mortgage had been paid by Smith,, without suit. Metcalf, J. said: “ The court are of opinion that the plaintiff can not maintain this action on the covenant against incumbrances. This action can be maintained, if at all, only on the covenant of warranty. To maintain an action on that covenant, the plaintiff must show an eviction, or what is tantamount to an eviction. And this is shown by the facts. The plaintiff paid a mortgage on the land, against which he could not make any legal defense, and thus bought in a paramount right for the purpose of preventing an actual eviction. This entitles him to an action on the covenant of warranty, unless that covenant is to be restricted in the manner insisted on by the defendant. The defendant insists that the exception of the mortgage in the covenant against incumbrances, e-xtends to the covenant of warranty,, so that the plaintiff’s claim is excepted from the latter covenant against the lawful claims of all persons, just as it would have been, if to that covenant, as it stands in the deed, had been added thfe words, ‘ except those claiming under the' mortgage above named.’ ”
The learned judge, after having referred to some of the text books, and some of the cases where the question of how far a general covenant is restricted by a special one, said: “We do no more than to state the ground of the opinion we have formed, that the defendant’s covenant of warranty is not restricted nor limited by his intended covenant against incumbrances. That ground is that the two covenants are not connected covenants of the same import, and directed to one and the same object.” The court then refers to the cases of *251 Sumner v. Williams, 8 Mass. 202; Howell v. Richards, 11 East. 633; Smith v. Compton, 3 B. & Ad. 189; and Kean v. Stong, 9 Irish Law Rep. 74, 84; and quote largely from some of these cases.
This case, it is true, is one of the most recent cases to be found upon the subject, and is received with all the respect for authority which we owe to so able a tribunal as the supreme court of Massachusetts. But the case, we think, must have received a less careful attention than is usually bestowed upon questions arising in that court. The opinion there expressed is certainly in conflict with the general current of English authorities, and the opinions expressed in the American cases referred to. And, however the opinion may be regarded in the State of Massachusetts, we can not regard it as a correct exposition of the rule of law applicable to this case.
Having respect, therefore, to the long and nearly uniform course of decisions upon the subject, both in England and America, we think the covenant of warranty in these deeds, upon which this action is brought, can not be held to be broken by the incumbrance complained of. The exclusion of this incumbrance from the covenant against incumbrances, must be held to except it as well from the covenant of warranty, and all other covenants in the deeds.
Judgment will therefore be entered in favor of the defendants.
Brinkerhoff, C.J., and Scott, Peck and Gholson, JJ., concurred.